Good afternoon, your honors. May it please the court, counsel. My name is David Picker, Inspector Daniel Rosen. We represent the appellants, Arthur Wolk and the Wolk Law Firm. And we reserve five minutes for rebuttal, which Mr. Rosen will be arguing. That's granted. I thank the court for indulging that request. Your honors, this is an insurance coverage case. Mr. Wolk and his firm had professional liability insurance coverage that not only provided indemnity but also the duty to defend against claims. The issue on this appeal is whether the insurer had a duty to provide a defense in the very same proceeding in which Mr. Wolk's liability for his professional conduct was being decided. Now it's important to note at the outset that the claim that the duty to defend was triggered not by a lawsuit but by a claim. This is not a defense against suits policy. It's a defense against claims. And a claim is broadly defined to mean a demand for loss. Demand is not otherwise defined. So it didn't matter here that there was not a formal lawsuit, a formal complaint against Mr. Wolk. What mattered was that there was going to be a proceeding in which his conduct and a claim of fraud against him was going to be adjudicated. Now, are you, when you use the word claim there, a claim of fraud, that's, I understand that's in your interest to do it, but was there, what can you point to in the record, Mr. Picker, that would show that other than an assertion by Mr. Wolk's client that if I lose I'm coming after you, that contingent assertion that anybody was asserting what You and I can go through that in some detail, but I would start out with, I think, the thing that probably would have given any person real pause, and certainly did Mr. Wolk, and he immediately provided written notice of that to the insurance carrier, which is the decision of the Superior Court in reversing the denial of precision's petition. And if you look in the precision petition and see lots of allegations of fraudulent conduct specifically directed against Mr. Wolk. And in response and in upholding that and sending it down for an evidentiary hearing to determine that, the Superior Court said, we do not declare at this juncture that Eiding or his counsel committed fraud in the inducement. And then they say, and this is appendix 99, rather we merely hold that they have presented strong prima facie evidence of fraud, and that the trial court should have held an evidentiary hearing. Then it says, we also, sorry, we also direct the trial court to hold an evidentiary hearing on precision's fraud claim. And the word claim is the Superior Court's word. Now anyone reading that, I think, could infer, in fact, would have to infer in all safety, that the trial court's evidentiary hearing on precision's fraud claim relates back to what the Superior Court just said it could not do, which was declare whether or not Eiding or its counsel, meaning Wolk, had committed fraud. So the trial court, when it got a common pleas court, when it got it back, clearly understood that it was not only determining Eiding's conduct, but it was also determining Wolk's conduct. And in fact, when Wolk gets this opinion from the Superior Court, his April 21st letter, the 21st letter, sending it to West Point Insurance, says, I think we're going to need counsel. That was like the understatement of the day. Of course he needed counsel, and they would not provide it. Now, one of the things that the trial court, the common pleas court, when it got it back, it went through, I'm not going to go through it here, but it went through tremendous detail about... Could I ask you a question about what you just said? What do you point to as a demand for counsel under the policy? You point to a letter, but was there a demand for counsel by Wolk to West Point? Yes, Your Honor. And if so, tell us what that was. At Appendix 119 to 120, Mr. Wolk sends the Superior Court opinion, a copy of the Superior Is that a demand for counsel under the policy? It is, Your Honor. Yes, it is, Your Honor, because it's providing notice of the claim and it's demanding... Is it demanding? Well, Your Honor, I mean, excuse me, Your Honor. Go ahead. It's not, he doesn't say I demand. He says, I think we're going to need counsel, and in the circumstances, I would say that that would be enough. But I would add that in the complaint itself, the allegations are, if you look at Appendix 22 in various paragraphs 46, 47, 50, 51, Mr. Wolk says that in addition to that letter, he was in verbal contact with Westport and continued to provide them with notice of the claim and to demand counsel. Doesn't he have to do that in writing under the policy? Well, I think, Your Honor... Policy is expressed on that. It doesn't have to be in writing, right? Yes, the April 21 letter is a demand for counsel and notice of a claim. April 21 letter. And that's what I proposed. Is that the one that says, I think we're going to need counsel? Yes, but, Your Honor, there's no, there's no, there's never been an argument, either in the trial court, the district court, or in this court, that that letter was not a sufficient demand for counsel. I think that's Westport's position. I understand. No, I don't believe that. Their position, Your Honor... We're going to have to decide that. That's correct. Their position was that we did not provide notice of a claim. And, and they did not say that there was not sufficient, as I recall, they did not say that there was not sufficient demand for counsel. Now, the complaint, which has to be taken as true, you know, it says that there was communication, both written and oral, that continued after April 21. Mr. Wall kept Westport up to date, provided Westport with copies of further pleadings and orders in the case, subsequently provided Westport with a copy of the discovery schedule. But I think what I'd also like to, my time's running low, but I'd like to point out is there's a serious problem here with respect to the collateral estoppel results of the termination of the common police court. If the decision had come out the other way, then Mr. Wall would have been bound by an adverse decision. He was having interest in what was being adjudicated. He controlled the litigation. He clearly would have been bound under the cases that we cite. The defense has to be provided in this proceeding if it's going to be provided at all. And that is particularly so because of the exclusion from defense coverage for any claim of intentional misconduct that is adjudicated. That is, the claim of intentional misconduct leveled against Wall, and he was completely exonerated. The claim of intentional misconduct was still, he was still entitled to a defense against that claim unless and until he was adjudicated. Now, had he been adjudicated to have committed the misconduct, his rights to a defense would have been completely cut off. So for Westport to sit back and say, we're not going to defend you in the very proceeding where his misconduct or liability is being adjudicated, we're going to wait to see what the outcome is. Well, then they get off scot-free from what they contracted to give him, which was a defense, which he was entitled to, which he didn't get. Well, I guess we'll hear from your opponent on this, but I presume their response is, we don't get off scot-free unless that's how things work out, and that is what we bargained for. We bargained for the right not to be on the hook until there was some claim actually leveled against Mr. Wall that we received notice of, and then there was So you're back to talking about what a claim is. Well, there's no question that there was a claim that was being litigated against Mr. Wall that was actually adjudicated by the common pleas court, and that he was bound by one way or another. There must be some question or we wouldn't be here, right? Wait, I have some more questions. Okay, I don't want to take away from Mr. Rosen's rebuttal time. No, we don't do that. Thank you. The Supreme Court of the United States does, but we don't do that. Were there separate lawyers representing Eigen who entered their appearance for Eigen, and a separate lawyer or lawyers for Wall? How did this work? Yeah, as I've said, Mr. Rosen was more deeply involved in that, but Mr. Wall continued in the litigation to represent Eigen as he always had. In addition, Mr. Daniels was brought in, and also Alfred was brought in, and essentially represented Wall and Eigen in a sense jointly because the interests really were the same, to prove that there was no fraud on the part of any party, which in fact they did establish in the common pleas court. Why do the legal bills from Specter-Gaden say, quote, attention to Eigen's executor, quote, if they were representing only Wall's interests? Can you tell me what you're reading from your own second? No, I'm just, I'm reading from my notes. Oh, okay. But the legal bills, which are in the record, from Specter-Gaden, say, quote, attention to Eigen's executor, and I just wondered why. Well, Eigen's executor was one of the parties whose conduct was being adjudicated. But who was Specter-Gaden representing? We were brought in basically to represent Mr. Wall, as I understand it. Okay, that's what I understand. And so my question is, when they sent the legal bills to, I guess, Wall's firm, why does it also say, I mean, what did Eigen's executor have to do with the legal bills? The time, I think what you're asking me is that the time tried to refer to work that was done paying attention. I think what she's saying, and I believe this is correct, is that the billing, but you could point us out where it's wrong, that the billing indicates that the client is not Mr. Wall. The billing indicates that the client is the executor of the Eigen estate. As I looked at the bills, the bills say that the case is Eigen versus Precision, because that was the case. But we sent the bills to Wall, because Wall was the one who was paying us, because he was the client. Now, there were a number of people who were involved in the case who had to provide evidence and who had to be scheduled for depositions and so forth. So I can't speak to the specific entry that you're talking about, but I am saying that certainly people named Eigen would have been people that we would have been talking to in order to prepare the defense. It's not a time entry that we're talking about. Then I'm not. But, all right. All right, Mr. Rosen says he wants to ask something. All right, well, we'll. I do have a question. Go ahead, sure. Could I get you to respond to this one assertion by your post in counsel, Mr. Picker? This is in the appellee's brief at page 11. Okay? And here is, in the middle paragraph on that page, there's the following statement. Other than a copy of the attached order, Wolk's June 20, 2005 letter provided Westport with no additional information about the Eigen action. Wolk did not dispute Westport's determination that this matter was a potential claim, did not report that he had retained new counsel to represent Eigen in the Eigen action, and did not report that Eigen had threatened to hold Wolk responsible for any adverse outcome in the Eigen action. All this is background information, obviously, to the assertion that you didn't give them the notice that they were entitled to. What's your response to that? My response is that the superior court opinion is the claim. It was sent two days later. That statement by me is supported in the complaint. And the complaint also says that Westport was provided with additional information, and the complaint also says that the letter may not, the June letter may not have specifically challenged Westport's May letter, but in the complaint it says that there were verbal discussions in which it was challenged. And in addition to that, there is subsequent correspondence in August and September and October in which Wolk makes it even clearer that, in fact, he says in the October 29 letter, which is a good five or six weeks before they formally disclaimed coverage, and while they might still have been able to do something, he says, this is a claim against me, and I'm going to hire lawyers, I have had to hire lawyers to protect myself. And that's, again, appendix 119, 120. So at that late stage, if Westport had come in, we wouldn't be standing here. But then they subsequently disclaimed coverage, and they got the petition that the Superior Court was upholding. There's no claim here that they didn't get some underlying information that prejudiced their ability to defend the case or to otherwise review the case. That's not an argument that I understand has been made here. So their argument basically is that the sending of the, the sending of the April 21 letter with a copy of the Superior Court saying, we don't say that Mr. Wolk committed fraud, we're going to let the Common Pleas Court hold an evidentiary hearing on that, that that together with subsequent correspondence and verbal communications, but including sending the precision petition, including reiterating both orally and in writing, I need counsel, this is a claim against me, which he said perhaps not as forcefully, but certainly an understatement in the original April 21 letter, I think we're going to need counsel. Well, yes, clearly, clearly you are. That, that's my response to that statement on their part. And I would just add also that this was not a summary judgment. This was a motion to dismiss. It's dangerous to pick and choose. Oh, I see this letter here and I see that thing over there. It's not a complete record. Of course, when you say this is summary judgment, you don't disagree. I think both sides agree that if on a 12B6 standard we determined that Westport would still win, then it would be harmless error for the court to have treated, the district court to have treated this as summary judgment, right? Yeah, I think that's what Rose said. We think that we have stated a claim under 12B6 and 8A. Thank you. Thank you, Ron. This is the one. They know what to do. I just didn't understand. May it please the court, my name is Jeffrey Ward and I represent Westport Insurance Corporation. Can you just say at the outset, Mr. Ward, because you're from Washington and I'm not used to that many Washington lawyers. In this circuit, I don't see people complaining when lawyers say this lawyer wants to do the main argument, but this lawyer wants to do the rebuttal. It's just not the way it's practiced in the court circuit. I was a little surprised. They don't usually do that, incidentally, but I was a little surprised at the tenor of your objection. But let's leave that past. Very well, Justice Barber. If I may, the purpose of my objection was to point out that- Let's let it pass. Let's get to what's before us. Very well, Your Honor. Okay. As a threshold matter- I don't have other mindsets. As a threshold matter, the outcome of this case and the way in which it's determined is really much more simple than my opponent makes it out to be. The claim against Westport is that Westport had a duty to defend the legal proceeding that was commenced in the court by the petition for relief that Precision Air Motive filed against Mr. Iden. The Pennsylvania Supreme Court has made clear that an insurer's duty to defend is determined solely based on the face of the pleading commencing a suit for which a defense is sought. As a result, the analysis of the duty to defend consists of a comparison of the pleading against the terms of the Westport policy. The Westport policy specifically provides that Westport's- Why don't you go ahead, and I know it's in your briefing, but tell us the case that you're relying on when you say the Pennsylvania law is perfectly clear on this. What's the case that makes perfectly clear that it's the pleading and the pleading alone that you look to to understand whether or not you've got a claim? It's Caverna Metals Division v. Commercial Union Insurance Company, 908-82D-888. The specific pin site is 896. It's Pennsylvania Supreme Court, 2006. I'd like you to respond to something Mr. Picker said, at least I understood him to say. Is it your position that Wolk didn't give the requisite written demand for counsel? Not exactly, Your Honor. Our position is that Wolk did not give requisite written demand of the claim. What Wolk gave notice of was a potential claim, and the April 21st letter that was discussed during the opening argument was not notice of a claim, it was notice of a potential claim. When Mr. Wolk said in that letter, I think we're going to need counsel, that was essentially his statement that we're going to need counsel in the event a claim is made. In fact, the Westport policy specifically distinguishes between potential claims and actual claims. The duty to defend is limited only to actual claims. So given the specific distinction between those two things in the policy, there can't be a duty to defend a potential claim. And that's what this was as of August 21st, and that's what it remained forever. Where in the policy is that distinction made? Sorry to stop in midstream, but I just want to find, we all have the policy. Sure, the policy defines claim at appendix page 45. And where is potential? And it defines potential claim at, well I have it down as 52. That's right. Potential claim is defined at joint appendix page 52. Okay, thank you. And the duty to defend is triggered by, quote, claim for loss against any insured. Now, respond please to your opponent's assertion that a claim within the terms of the policy is to a suit where, which is against the insured. Now, you'd say against means you've got to be named in the title. They say, no, that can't be the meaning because all his rights, everything that he was interested in protecting against was at issue in that proceeding. He was, there was a fraud charge directed at him. Everybody understood there was a fraud charge directed at him. And that that was a proceeding that was going to decide whether he had committed fraud. And therefore, it was a suit against him in every meaningful sense of the word except perhaps that his name was in the title. That's how I understand them to be making their pitch. Why is that not a logical thing to understand the word claim to mean in the context of this specific policy? Okay, let me answer your question in two parts. First, let me explain why the language of the policy indicates that this proceeding was not a claim. And then let me indicate why. Let's do it instead of talking to you. The policy's duty to defend is triggered only by claim for loss against any insured. And I would submit that the key words in that are against any insured. And that there's no reasonable interpretation of that that would apply to a lawsuit brought not against an insured but against the insurance client. And I think that interpretation is reinforced by the fact that the claim is defined as a demand made upon any insured for loss. And loss in turn is defined as the monetary and compensatory portion of any judgment. Whereas here you had a lawsuit where the defendant was not the insured but rather the insured's client. The insured could not possibly be held liable for monetary or compensatory judgment because he wasn't a party to the lawsuit. Well, yeah, but if it had turned out differently, wouldn't he have been held collaterally estopped from claiming that he was not a party or in privity if he had participated on behalf of law? No, Your Honor, he would not have been collaterally estopped. I used to teach that subject and I'm not so sure that that's right. Go ahead. I'm sorry. No, if he had participated and it turned out differently and the court in the proceeding held that not only Eichen but Moore had committed a fraud or, well, fraud isn't covered, but had done something wrong, you would say that as a matter of law he wouldn't be collaterally estopped from denying that? Correct, Your Honor. An attorney is not in privity with his client when the attorney's role in a case is as counsel as opposed to being party. Contrary to my opponent's argument, counsel does not control its client's lawsuit. In fact, the opposite is true. Counsel is at all times under the control of its client. And there are cases, including cases in Pennsylvania that I've cited in my brief, that specifically hold that an attorney is not in privity with his client in a lawsuit where the attorney is acting as counsel because the attorney's ethical obligation to its client requires that he consider solely the client's interests and, therefore, he cannot adequately protect his own interests. But here the decision certainly threw Walks' actions into question, didn't it? Yes, Your Honor, it did. However, ultimately what the court was going to decide, and the only thing the court could decide, was whether the party defendant, that is Mr. Eichen, was liable. The fact that there would be factual issues concerning the role of his counsel would not render any decision binding on the counsel in a later legal malpractice action because the Pennsylvania appellate courts have held that an attorney is not in privity with his client when he's representing him in an underlying case. But suppose he participated in that. Doesn't it change once you have a lawyer who participates in that proceeding, whether or not he's named or not? Well, a lawyer participates in every proceeding to the extent he's counsel. I mean, qua lawyer, I mean, qua participates to defend his own actions. Then, notwithstanding the technical provisions with respect to collateral estoppel, I'm not sure that you don't have to rely on the technicality of he wasn't named. If he actually participates and the decision is adverse, then doesn't he get collateral estoppel? Your Honor, he could not be collaterally estopped because he could not participate in the underlying case in the manner in which he could have a fair and adequate opportunity to defend himself against the factual determinations that would be necessary for a legal malpractice action. But he had a lawyer. But Mr. Wolk wasn't there. He had a different lawyer. There was one lawyer for Wolk and one lawyer for Eichen. Your Honor, that is contradicted by the record in the publicly available record in the underlying claim. Mr. Wolk was, had entered his appearance as counsel for Mr. Eichen. The fact that, and I believe the record also indicates that the counsel, the other counsel from Spector Dan Rosen and Mr. Daniels, the docket reflects that they entered their appearance as counsel for Eichen. The record reflects no entry of appearance by those counsel on behalf of Mr. Wolk. But even if it had. Does that raise a material issue of fact? No, it doesn't, Your Honor, because that's a publicly available document of which the district court can take judicial notice on a motion to dismiss. Well, here's what I'm trying to ask. I hear Mr. Baker saying on behalf of Mr. Wolk that he was involved in that case. And maybe I'm reading too much into what they're saying. But along the lines of what Judge Slogar was just asking, if he was there represented by a lawyer and being permitted to participate in the proceedings, that is, an entry of an appearance. There sounds like there might be some collateral estoppel effect to that. You're saying no, the record doesn't show that there was any entry of an appearance by another lawyer on behalf of Mr. Wolk. And so I guess the question that raises in my mind is, do we have an issue of fact with respect to whether or not he was involved in the proceeding below in a way that would give rise to collateral estoppel effects? Your Honor, we don't have an issue of fact because it's not even alleged that Mr. Wolk ever withdrew his appearance in the underlying case on behalf of Mr. Eigen. The allegation in my view is contradicted by the record, but even assuming it's true, the allegation is that Mr. Wolk was at all times counseled for Mr. Eigen in the underlying case. While simultaneously other counsel were representing Mr. Wolk and Mr. Eigen jointly. Because Mr. Wolk never withdrew his appearance as counsel for Mr. Eigen, he was at all times bound to represent solely Mr. Eigen's interests. And under the Pennsylvania authorities that we've cited in our brief, he cannot be held in privity with them for the purpose of collateral estoppel. And I just point out that my opponents have not cited a case from any jurisdiction anywhere that holds an attorney in privity with his client during an underlying case for the purpose of collateral estoppel. And I don't believe it's ever happened. Because to hold that would significantly prejudice any attorney in any case where he's representing his client where sometime during the context of that case, it might be alleged in any capacity that he had made a mistake. It always happens in the criminal cases. And Mr. Ward, if in fact Mr. Wolk was represented by counsel who were participating in that proceeding, how does that square up with your assertion that his interests weren't represented in a way that could be of collateral estoppel? I understand your privity argument. I understand that argument. But you've also, you seem like you're acknowledging that Mr. Wolk, that there was a lawyer participating in that hearing who represented Mr. Wolk. Is that true? Actually, I am not acknowledging that. I believe that the record that was properly before the court on the motion to dismiss the publicly available docket in the underlying case shows that the attorneys that my opponents today claim were representing Wolk had entered their appearance only on behalf of Mr. Eigen. But assuming for the sake of argument that those attorneys entered their appearance jointly on behalf of Mr. Wolk and Mr. Eigen, which is what I believe Mr. Pinker said in his opening argument, those lawyers also would have an ethical obligation to both Mr. Eigen and to Mr. Wolk. And so they would not be able to point out defenses that might be available to Mr. Wolk that would be unique and might create a conflict between Mr. Wolk and Mr. Eigen. I don't think we should have to speculate. Do we know, do we have before us in any way on the record whose appearance was entered for whom? The docket sheet in the underlying case. And is that in our record? Yes, it is in the record. Do you know where it is in the appendix? Or maybe you can tell us afterwards. I just, I mean, I don't want to get into this. Maybe they did this, maybe they didn't. Yes, one moment. If you have it, please. I mean, I know your red light's on. So, and I, it's late. Do you have another place to put it? I know it's in my brief, Your Honor. If you'd let me take a moment, I will identify it for you. Well, why don't you tell us, why don't we hear the rebuttal and then why don't you look for it with one ear, looking with your eyes and with one ear to what Mr. Resnick says, okay? Yes, thank you, Your Honor. Thank you. For the record, you'll tell us who you are. Yes, Your Honor. My name is Paul Rosen. I represent the appellants in connection with this appeal. Do you know the answer to the question I asked? Yes, I do, Your Honor. Yes. In the record, our docket entries are an appellate matter. There is a, at around, ATP around 3, 3 in September, August, September, an entry of appearance by Jennifer Myers of our firm was filed on behalf of Ivan. And that's on page what I'm saying. I'm trying to find it. Okay, well then. Here it is. I believe it is sort of August 10th on page 333. Okay. August 12th and August 10th. And was there any appearance on behalf of? Yes, Your Honor. Wolk. Yes. The way the case, we have attached to our reply brief the transcripts of the depositions that indicate that both my firm entered its appearance for both Mr. Wolk and for Mr. Ivan under a joint defense theory as appropriate for, with respect to each witness. We've attached it. I can read it to the court. No, we, we'll, you don't have to take time to do that. We have the reply. But I also wanted to answer your first question as to why the bills have the attention of Albert Eigen. Yeah, because I found that. Yes, Your Honor, I wanted to explain. The legal bills that were prepared were addressed to Arthur Wolk and then under it says attention Albert Eigen. Executive. The reason that was done is because the appellate court permitted Arthur Wolk his own hearing to make claims against Mr. Coyle for what he claimed was a false affidavit in stimulating the Superior Court to hold him responsible for fraud. And there was supposed to be two hearings, one hearing on to the fraud of Mr. Wolk and Mr. Eigen and a second hearing to determine the professional responsibility and violations of Mr. Coyle for the false affidavit before the Superior Court. That is reserved in the appellate decision in the Superior Court where, therefore, when we bill Mr. Wolk, we separately placed in there that Mr. Eigen would have the right to pursue attorney's fees in connection with that sanctioned hearing or hearing to establish damages. But there is no question when you read the bills that there was a joint defense and that we appeared for Mr. Wolk in all of the proceedings. The court also asked a question with respect to notice. The court will recall that when the April 21st letter was sent to Westport saying I need a lawyer, that's not exactly a demand as the court would understand. But what was going on at that moment is that Mr. Wolk filed a motion for reconsideration en banc to the Superior Court and was telling them that I'm giving you the Superior Court opinion where it says that I acted fast and loose and the court should be sensitive to adherence bolema, my fraudulent conduct, etc. I'm sending it in to you and I'm telling you that we are filing motions for reconsideration en banc. So from April through August, the matter was still unfolding before the Superior Court en banc. In August, there was a decision denying all motions for reconsideration and the case was directed to the lower court for immediate proceedings before Judge Moss. At that moment in time, Mr. Wolk sent another letter in which I think is important for the court to hear. This is dated September 29th. The appendix number is APP120. It starts at APP118. I just want to read what Mr. Wolk says in that letter in the last page. Anybody can make a claim of fraud against anybody. The fact that precision's lawyer has claimed fraud does not in my view mitigate GE's obligation to provide me with a defense, which GE has yet to do. This was after a number of correspondence, delivery of documents, and things of that nature. He is making it clear in September that we're about to go to hearings in the lower court and gives the GE, by the way, as the adjuster for Westport. It's in response to their letter saying we're taking this under advisement. We appreciate you getting information back to us. He hits them in no uncertain terms on September 29th and says, where's my defense? He does it again, Your Honor, on October 25th when they refused to give it to him by saying, I need to know if Westport will provide coverage and a defense. This is in Appendix 121. He constantly was on their back for defense. They finally submit to him that they'll give him a lawyer to stand by him but not to enter an appearance. And he writes back on November 22nd, too little, too late. At that point in time, there were 36 depositions scheduled in November, which he points out to them in October. I don't think, Mr. Rosen, that anybody contested that Mr. Wolk's interests were involved here. I don't even understand your opposing counsel to be saying his interests weren't implicated in a significant way. The argument that we're hearing is we got a document. That policy document says we cover you claims for loss. This isn't it. This is a- I'd like to address that. And if you would, the specific argument we just heard from counsel for Westport that said loss is a defined term. It's a monetary loss. It's a judgment. It's something like that. This isn't that. I'll address that. First and foremost, we have to look at the superior- First, we know that the superior court says Wolk- So we're sending it down for an evidentiary hearing on whether or not there was substantial reliance, there was fraud, falsity, fought fast and loose, that Mr. Wolk has done these tactics before. Make sure when you're down there, you check it out. There's an evidentiary hearing. The case then goes down to Judge Moss to look at precision's pleading. Precision's pleading is the next document the court has to look at. Precision's petition, it's petition for relief that the court sent down for a hearing with the direction from the superior court, who has converted that petition to a claim against Wolk by its own direction to the lower court. The petition by precision says at page- It starts at page 215 of the appendix, but at 221, Thus, Albert Eigen, at paragraph 22, Thus, Albert Eigen and his counsel falsely represented to precision and swore motions for discovery, etc. It then says at paragraph 49, at appendix 232, Precision is entitled to relief for concealment of misconduct by the estates, their attorneys. And then it lists a whole conscience of violations. I understand that. I'm with you. I understand what's being said there, Mr. Rosen. I'm trying to get you to focus on this question of loss, a defined term. On page appendix 51, whenever used in this coverage unit means the monetary and compensatory portion of any judgment, award, or settlement. And then it gives exceptions for what loss isn't. I'm going to go on. The next paragraph is paragraph 50, which says that in addition to the specific request that they put in 49, they also authorized precision, a civil remedy for the concealment of misrepresentation, including compensatory damages, as well as consequential punitive. Forget about punitive for a moment. Compensatory damages, they define as awarding precision, compensatory damages in the reduction of the settlement, and amounts over the settlement. That is compensatory loss. In addition, they ask that Mr. Walt be held responsible for attorney's fees for the fraud, which under Pennsylvania law, you can recover as consequential damages. Therefore, when he went into that hearing, a decision against him, he would have had, let's say that the settlement was a million three, and the court says that precision was harmed by a million. The money was up. A million dollars comes off the top. It is delivered. The plaintiff only gets 333, and Walt suffers the loss that he is exposed to for that million dollars in the reduced settlement by decision. Now, let's stop there for just a minute. I know we're over time here, but if I could pursue this question. Go ahead, because I have a question too. When you say he's on the hook, I may be a AAA here, but I understand you saying he's on the hook for that difference, but what is it that puts him on the hook? Isn't it another action that has to be taken, an action at which point there would be a duty to defend? That's how I understand your point of the argument, that these bad things are happening. There's another thing that's got to happen. There's another step that has to happen, and their obligation to defend doesn't kick in until Mr. Eigen turns around and sues Mr. Walt. But this case is not a lawsuit case. This is a claims-made case. Henkel was a lawsuit case, and Henkel, in Henkel, where the actual coverage doesn't trigger unless you're a named party, is different than a claims case. In fact, we cited to the court Pierce, and Pierce couldn't say it any better, so I wanted to say it, which is a 2006 decision from the District of Columbia. Quote, In that particular case, there was a suit in which the surety was seeking... In that particular case, it was resolution of claims by a surety for the insured. Not the insured, the surety. It's the same thing as if the surety in this situation was Eigen, because he hadn't brought the claim, but his decision would be determined. In fact, Eigen was a surety because his money was up, and they were determining the decision with respect to a surety. He was not a named party. They raised in that case that the surety is not a named party, and under Henkel could not get defense or reimbursement for its expenses. The court held, quote, The insured would have been legally bound to identify the third party for any pain and dissatisfaction of judgment. Assume for a moment it found that Walk had committed fraud. He has an absolute legal obligation under the law if he had committed fraud to pay Eigen, who in that particular case was his client. The court goes on to say, Resolution of the claims against the third party, not the insured, would have required resolution of allegations about the insured's conduct. This is exactly our case. They could not have resolved the allegations against Eigen without resolving the allegations against Walk. The court goes on to say that the policy which plainly contemplates formal litigation in which the insured is a named defendant, they're distinguishing Henkel. I'm sorry, I meant to say, they're distinguishing Henkel. And they're saying that in Henkel, that policy which plainly contemplates formal litigation in which the insured is a named defendant, whereas this case, the policy is to claims, as well as suits, and the term claim is that the man which seeks damages does not carry the same limitation. In this situation, the claim does not make it so that you are limited to the four corners of litigation that hasn't been done. Our response to that also, there's another important point. I think I got you. Let me see if I can understand your position, if this is correct. Admittedly, Walk wasn't named as a party. But as I understand what you just said, when the Superior Court sent it back for a hearing, it turned representation or something, it became a claim at that point, and that the letter of October something to Westport was a written demand for representation. To him individually. And that that is invoked by the duty to defend. Correct. And so it's not so much a question of loss there, but there's also a duty to defend under the policy. We claim that that triggered the duty to defend. There are two other things that triggered it too. When the court sent it down to Ringman to judge Moss, she characterized her job as to determine whether or not Walk had committed fraud. And she puts in her opinion, and it's important for the court to note, to at least read these sections of her opinion, where at appendix 174 and 175, she says she has to determine whether Walk had committed the fraud, whether the coil affidavit was true or false. Yeah, but fraud is not covered, right? No defense of it is. He was never looking for anything except defense. Under the policy, they have to come to his defense on an allegation of fraud unless there was a determination of fraud. They have to defend it regardless of how frivolous it was or anything else. If there was a potential for one bit of smoke to come under the door to nail Walk, they have to come to his defense. It is our position that that smoke was generated by the Superior Court and by the decision on the remand by what the court did as well as the petition itself that asked to hold Walk individually responsible for the conduct. Okay. I'm sorry. You're way over your red line. I'm sorry. All right, Your Honor. Any questions, Arthur? No. Okay, thank you very much. You're welcome, Your Honor. Okay, we will take this case under advisement. Michael? Please rise.